I disagree with the majority's conclusion that plaintiff has asbestosis and that he is entitled to 104 weeks of benefits pursuant to §97-61.5(b). The prerequisites for an order of removal under §97-61.5(b) are:
Diagnosis of asbestosis or silicosis; and
 Current employment that exposes plaintiff to the hazards of asbestosis or silicosis.
N.C. Gen. Stat. § 97-61.5(b); see Austin v. Continental GeneralTire, 141 N.C. App. 397, 540 S.E.2d 824 (2000) (J. Greene, dissenting),reversed and adopting dissenting opinion, 354 N.C. 344, 553 S.E.2d 680
(2001); Abernathy v. Sandoz Chemicals, 151 N.C. App. 252, 565 S.E.2d 218,review denied, 356 N.C. 432, 572 S.E.2d 421 (2002). The award of 104 weeks requires that plaintiff additionally prove a third element:
 That the employee is removed from the industry at the directive of the Commission.
Moore v. Standard Mineral Company, 122 N.C. App. 375, 469 S.E.2d 594
(1996); Clark v. ITT Grinnell, 141 N.C. App. 417, 539 S.E.2d 369,remanded for reconsideration in accordance with Austin, 354 N.C. 572,558 S.E.2d 867 (2002); N.C. Gen. Stat. § 97-61.5(b). Because plaintiff has failed to establish each of the three requirements, §97-61.5(b) benefits should not be awarded in this case.
 DIAGNOSIS OF ASBESTOSIS
I disagree with the majority's conclusion that plaintiff has asbestosis. "Asbestosis" is statutorily defined as "characteristic fibrotic condition of the lungs caused by the inhalation of asbestos dust." N.C. Gen. Stat. § 97-62. Moreover, asbestosis is a medical condition that is to be determined by current, medically accepted standards of diagnosis. The medically accepted standards for the diagnosis of asbestosis are contained in The Diagnosis of NonmalignantDiseases Related to Asbestos, 134 American Review of Respiratory Disease
363 (Adopted by American Lung Association, March 1986). The North Carolina Workers' Compensation Act places the burden on the plaintiff to establish that his claim is compensable by a preponderance of the competent evidence. In a similar fashion the medical standards for a differential diagnosis require that the physician have all available medical evidence necessary to make the diagnosis and that the doctor consider and be able to preclude other potential causes for the disease or condition. See Westberry v. Gislaved Gummi, 178 F.3d 257 (4th Cir. 1999).
The American Thoracic Society has determined that the diagnosis of "asbestosis" is a judgment based on a careful consideration of all relevant clinical findings. The Diagnosis of Nonmalignant DiseasesRelated to Asbestos, 134 American Review of Respiratory Disease 363 (Adopted by American Lung Association, March 1986). According to the American Thoracic Society, the diagnosis of asbestosis requires:
A reliable history of exposure, and
 An appropriate time interval between exposure and detection, with[1]
 Chest roentgenographic evidence of type "s," "t," "u," small irregular opacifications of a profusion of 1/1 or greater,
 A restrictive pattern of lung impairment with a forced vital capacity below lower limit of normal,
 A diffusing capacity below the lower limit of normal, and/or
 Bilateral late or pan inspiratory crackles at the posterior lung bases not cleared by cough.
The American Thoracic Society (ATS) acknowledged that interstitial fibrosis might[2] be present without any of the other criteria; however, the ATS stated that a clinical diagnosis could not be made without the other criteria. Id.
Having reviewed the evidence in accordance with the ATS standard, I do not agree that plaintiff has a valid diagnosis of asbestosis. By history, plaintiff appears to satisfy the first two criteria of the ATS standard, which address exposure and latency. As expressed by the ATS standard, however, these two criteria alone are not sufficient to diagnose asbestosis, and this position appears to be reasonable in that not all persons exposed to asbestos dust develop asbestosis. The issue is diagnosis of the disease, not merely whether the employee is or was exposed. The third criteria addresses radiological evidence of interstitial fibrosis consistent with asbestosis and requires small irregular opacifications of type "s," "t," "u," with a profusion rating of 1/1 or greater. Though numerous x-rays are in evidence, they do not support the diagnosis of asbestosis[3] because they fail to consistently establish the required profusion rating of 1/1 or greater. Further, numerous pulmonary function studies are in evidence that reveal that plaintiff has obstructive lung disease, most likely emphysema or some other form of COPD secondary to smoking, however, without evidence of a restrictive pattern consistent with asbestosis. Thus, the evidence does not support the fourth criteria. Plaintiff has a lowered diffusion capacity based on his non-related obstructive disease, however, no restrictive component necessary for the diagnosis of asbestosis. Finally, plaintiff has not consistently demonstrated bilateral late or pan inspiratory crackles in the posterior lung bases, not cleared by cough, as required under the sixth criteria of the ATS standard. Because the evidence does not support the third through sixth criteria of the ATS standard for diagnosis, I cannot agree with the majority's conclusion that plaintiff has asbestosis.
Further, I note that the evidence cited by the majority does not competently support the conclusion that plaintiff has asbestosis. For example, the majority cites physician conclusions that plaintiff has conditions that are "consistent with" asbestosis. The majority has failed to set forth facts that are in evidence to establish a diagnosis based on the medically accepted standard for diagnosis adopted by the American Thoracic Society. See Young v. Hickory Business Furniture, 353 N.C. 227,538 S.E.2d 912 (2000) (speculation and conjecture is not evidence); Seealso Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579,113 S.Ct. 2786 (1993) (court has duty to police the evidence to ensure that it is scientifically credible). Although a radiographic finding "consistent with asbestosis" would give reason to consider this potential diagnosis, however, it is not relevant evidence[4] that establishes that plaintiff more likely than not has asbestosis. See Holley v. ACTS, ___ N.C. ___, ___ S.E.2d ___ (2003) (could or might testimony not sufficient, standard is a reasonable degree of medical certainty);Rutledge v. Tultex Corp., 308 N.C. 85, 301 S.E.2d 359 (1983) (prima facie case requires evidence that it is reasonably probable that a particular cause will cause a particular effect); Swink v. Cone Mills,65 N.C. App. 397, 309 S.E.2d 271 (1983) (mere possibility does not satisfy requisite standard). For example an x-ray with a 0/1 or 1/0 profusion rating would be "consistent with" asbestosis, however, is not sufficient to actually diagnose the disease. See The Diagnosis ofNonmalignant Diseases Related to Asbestos, supra.
The majority, inappropriately, has accepted evidence that plaintiff's condition is "consistent with" asbestosis when the medical evidence does not support the diagnosis of asbestosis under the accepted medical standard for diagnosis. The majority cites the conclusions of Dr. Darcy to support a finding that plaintiff has asbestosis, however, a careful review of Dr. Darcy's report indicates that he relies on Dr. Johnson's report[5] of a B-read of a 1997 x-ray which was interpreted to show a 1/1 profusion rating. The evidence, however, is that Dr. Johnson never read the film in question and the 1/1 profusion rating is not confirmed by any other qualified physician. To the contrary, Dr. Lucas, plaintiff's choice of physician, read the same film to only reveal a 1/0 profusion level; Dr. Hayes, selected by the defendants, read the film to reveal no abnormalities consistent with asbestosis; and Dr. DiMeo, selected by the Industrial Commission, testified that the 1997 film did not support the diagnosis of asbestosis. In addition, no physician found a 1/1 or greater profusion level on the 1999 studies or indeed any other x-ray taken of plaintiff.[6] Thus, Dr. Darcy's reliance on the report of Dr. Johnson is misplaced and his corresponding conclusion is not supported by competent medical evidence. Moreover, the diagnosis of asbestosis is an educated judgment call (a differential diagnosis) to be made by a qualified pulmonologist based on all of the relevant medical criteria, and cannot and should not be based on one radiological study. See The Diagnosis ofNonmalignant Diseases Related to Asbestos, supra. A proper differential diagnosis is formed when the pulmonologist has reviewed the x-rays in conjunction with the other relevant clinical findings.[7] The evidence is that Dr. Darcy, although a pulmonologist, did not independently review the chest x-ray, he relied on Dr. Johnson's [sic] aberrant x-ray report, and did not have or otherwise consider the other contrary radiological studies and pulmonary function studies. For these reasons, the Commission cannot accept Dr. Darcy's report as competent medical evidence.
The majority also appears to rely on the unsupported conclusions of Dr. Curseen. Dr. Curseen's findings, including those cited by the majority, show that plaintiff has obstructive lung disease, which is not related to asbestos, rather than restrictive lung disease, which is associated with asbestos exposure. In fact, Dr. Curseen's pulmonary function testing revealed "mild obstructive lung defect" with lung volumes "within normal limits." If plaintiff had asbestosis, under the ATS standard, one would look for restriction in lung volumes, which is not present in plaintiff. Further, the majority relies on B-reads by Dr. Rao and Dr. Lucas and suggests that their findings support a diagnosis of asbestosis. However, as the majority has reported, plaintiff's profusion levels, according to Dr. Rao and Dr. Lucas, are 1/0, which is below the ATS minimum threshold of 1/1 required to make the diagnosis of asbestosis.
The failure of the majority to determine the case on "facts" and to examine the underlying basis of the physician's conclusions is best illustrated by the summary dismissal of Dr. DiMeo's testimony and medical reports. Dr. DiMeo explained that the finding of "interstitial changes" on CT Scan and x-rays, although "consistent with" a diagnosis of asbestosis, does not establish that plaintiff has asbestosis, particularly in light of plaintiff's extensive emphysema. Moreover, Dr. DiMeo applied the ATS criteria for the diagnosis of asbestosis and concluded that the diagnosis could not be made in plaintiff's case. Dr. DiMeo did not testify, as suggested by the majority, that he could not render a diagnosis. To the contrary, Dr. DiMeo has an opinion and that opinion is that the medical examinations, pulmonary function testing, and radiology studies do not allow him to make the diagnosis of asbestosis; i.e.: plaintiff does not have asbestosis.
The majority has provided no reason for discounting the opinion of Dr. DiMeo, the Commission selected examining doctor. The intended role of the panel examination physician is to provide the Commission with an unbiased medical examination. However, the majority has improperly chosen to misconstrue and discount Dr. DiMeo's testimony without weighing his testimony against all of the other medical evidence. Weaver v. AmericanNational Can Corp., 123 N.C. App. 507, 510, 473 S.E.2d 10, 12 (1996) (citing Harrell v. Stevens Co., 45 N.C. App. 197, 205,262 S.E.2d 830, 835, disc. review denied, 300 N.C. 196, 269 S.E.2d 623
(1980)); Butler v. Dupont, COA01-550 (2002); Moore v. City of Lexington, COA02-223 (2003).
In answering the question before us, i.e., whether plaintiff has asbestosis, it is necessary to look beyond the bald conclusions of the "experts" and determine whether their opinions are supported by competent and medically accepted evidence. See Smith v. Beasley Enterprises,577 S.E.2d 902 (2002) (Commission should review witness' testimony to determine that it is competent). Therefore, although the "experts" relied upon by the majority state that plaintiff has pathology consistent with asbestosis, the factual bases for their conclusions do not comply with the minimum required medical standards adopted by ATS. The physician's conclusions that are not supported by the relevant criteria under the medically accepted standard are not competent evidence. See Holley v.ACTS, ___ N.C. ___, ___ S.E.2d ___ (2003) ("could or might" evidence not sufficient, standard is reasonable degree of medical certainty); Youngv. Hickory Business Furniture, 353 N.C. 227, 538 S.E.2d 912 (2000) (speculation and conjecture is not evidence); See also Daubert v. MerrellDow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786 (1993) (court has duty to police the evidence to ensure that it is scientifically credible).
 NECESSARY ELEMENTS FOR ORDER OF REMOVAL/104 WEEKS
Removal from employment under § 97-61.5 requires a finding of at least two conditions: (1) that the plaintiff has a compensable claim for asbestosis; and (2) that plaintiff is currently employed (at the time of the "hearing after first [panel] examination") in a position that causes harmful exposure to asbestos. See Austin v. Continental General Tire,141 N.C. App. 397, 415, 540 S.E.2d 824, 835 (2000) (J. Greene, dissenting), reversed and adopting dissenting opinion, 354 N.C. 334,553 S.E.2d 680 (2001); Moore v. Standard Mineral Company,122 N.C. App. 375, 469 S.E.2d 594 (1996). On the issue of removal, §97-61.5(b) specifically provides:
 "If the Industrial Commission finds at the first hearing
that the employee has asbestosis or if the parties enter into an agreement to the fact that the employee has asbestosis, it shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis"
[Emphasis added] Plaintiff has not met the second condition, and indeed has presented no evidence to prove that his occupation currently "exposes him to the hazards of asbestosis." Only an appropriate order of removal, that actually removes plaintiff from his employment in the industry, triggers the payment of 104 weeks of benefits. See Clark v. ITTGrinnell, 141 N.C. App. 417, 539 S.E.2d 369, remanded forreconsideration, 354 N.C. 572, 558 S.E.2d 867 (2002); Austin,141 N.C. App. at 415; Moore, supra (removal from industry by directive of Commission); N.C. GEN. STAT. § 97-61.5(b) (if employee is removed from industry).
The application of the statutory provision regarding removal and subsequent payment of 104 weeks has a practical purpose and historical significance. By way of an explanation, employees in a dusty trade are entitled to a dusty trade card only after passing a chest x-ray screening, and for as long as their yearly chest x-rays remain clear. Upon a finding of asbestosis after clinical examination (the first panel examination), the employee's dusty trade card is revoked, prohibiting his continued employment in the dusty trade industry. The diagnosis of asbestosis and evidence of current hazardous exposure to asbestos thereby trigger an order of removal and the second and third panel examinations during which time the 104 weeks of benefits is paid. The length of the 104-week period is significant in the statutory scheme of the panel examinations. A 52-week period exists between the first and second panel examinations and another 52-week period exists between the second and third panel examinations. This accounts for the 104 weeks of benefits which are provided as a "safety net" for an employee who is suddenly prohibited from further employment in the dusty trade industry where the employee is currently hazardously exposed and whose final disability determination will not be made until after the third panel examination. Although § 97-61.5 has now been extended by the courts to non-dusty trade employment, the same principles apply. The 104 weeks of benefits is intended to compensate the employee who suddenly is prohibited from continuing in his current employment because it exposes him to the hazards of asbestos. Thus, evidence of plaintiff's current exposure to the hazards of asbestos is a critical element to be established prior to an order of removal and payment of 104 weeks of benefits.
Plaintiff has the burden of proof on the issue of current exposure to the hazards of asbestos. While plaintiff is not required to provide scientific proof of his current exposure to asbestos for purposes of § 97-61.5(b), nevertheless he must prove current exposure by the greater weight of the competent evidence. See Austin, 141 N.C. App. at 404. The Austin Court did not hold, as plaintiff suggests in this case, that plaintiff is entitled to removal without establishing that he iscurrently exposed to the hazards of asbestos. Further, § 97-61.5(b) compels removal from "hazardous exposure" to asbestos, not merely because a facility may have asbestos present, but because asbestos is present in such a form as it can be inhaled, i.e. friable. Asbestos that is non-friable, encapsulated, or in other form such that it would not be inhaled and therefore not cause or contribute to asbestosis is not, while in that form, a "hazardous" exposure. Thus, plaintiff must present evidence that there is asbestos in the facility that currently presents a hazardous exposure to him while working. See Austin,141 N.C. App. at 415.
Plaintiff has not presented any evidence that his employment with defendant currently exposes him to the hazards of asbestos. No lay testimony was offered in this case. The parties did stipulate, however, that plaintiff continues to be employed by defendant. There is, however, no evidence that plaintiff is currently, hazardously employed. The majority finds in Finding of Fact No. 3, "plaintiff was exposed to asbestos for more than 30 days or parts thereof inside seven consecutive months from 1 January 1972 until the present." However, there is no evidence, stipulation, or reasonable inference to support the finding that plaintiff is currently, hazardously exposed to asbestos in employment with defendant. The majority correctly finds that plaintiff continues to be employed by defendant. The parties also stipulated that plaintiff was last injuriously exposed (30 work days inside of seven consecutive months) to asbestos while employed by defendant. This finding and stipulation taken together, however, do not support the majority's finding and conclusion that plaintiff was hazardously exposed throughout his employment, or more significantly, at the present time is hazardously exposed in his employment with defendant. The stipulation does not define when during the thirty-some years of employment plaintiff was last exposed to the hazards of asbestos, and more significantly, does not state whether plaintiff is currently exposed to the hazards of asbestos. Plaintiff bears the burden to establish that he currently "engages in an occupation which exposes him to the hazards of asbestosis." Thus, there is no evidence to support an essential element of plaintiff's claim under § 97-61.5(b).
 PLAINTIFF'S § 97-57 ARGUMENT IS MISPLACED
Rather than presenting evidence of current exposure to the hazards of asbestos in his employment, plaintiff suggests that the stipulation, made pursuant to § 97-57, that plaintiff was exposed to asbestos for 30 days within a seven-month period,[8] presents an irrebuttable presumption that plaintiff was exposed to asbestos in the last 30 days of his employment. Plaintiff's reliance on § 97-57 to determine current
exposure is misplaced because § 97-57 is not applicable for determining current exposure. Section 97-57 determines liability for "last injurious exposure" when there is a series of defendants, all of whom are potentially liable because their employment caused plaintiff to be exposed to the hazards of asbestos. Defendant's stipulation to "last injurious exposure" merely indicates that, should plaintiff successfully establish a compensable claim for § 97-61.5(b) benefits, then defendant is the liable employer. Section 97-57 does not abrogate plaintiff's burden to prove the elements of his case, including but not limited to, the elements for removal and the award of 104 weeks under § 97-61.5(b).
Plaintiff's argument arises from a misinterpretation of the Court of Appeals' decision in Barber v. Babcock Wilcox Construction Company,101 N.C. App. 564, 400 S.E.2d 735 (1991) and the North Carolina Supreme Court's decision in Fetner v. Rocky Mount Marble Granite Works,251 N.C. 296, 111 S.E.2d 324 (1959). Both of these cases deal with the issue of "last injurious exposure" for purposes of determining the particular defendant liable for benefits. Plaintiff misapplies § 97-57
to abrogate plaintiff's burden of proof with regard to current exposure when § 97-57 is only applicable after plaintiff has carried all of the threshold burdens of proof for compensability of his disease. Section97-57, in and of itself, does not remove plaintiff's burden to prove a necessary element of his § 97-61.5(b) claim; i.e.: current exposure to the hazards of asbestos. Furthermore, as these cases dealt with dusty trade defendants whose facilities continued to cause current exposure, whether there was "current exposure" was not an issue in controversy and therefore not a litigated issue in these cases.
Plaintiff has misinterpreted the Barber decision. Plaintiff, out of context, quotes Barber to find that § 97-57 "creates an irrebuttable legal presumption that the last 30 days of work is a period of last injurious exposure." See Barber 101 N.C. App. at 565. The issue inBarber was whether plaintiff who was only employed for forty-eight days at the second of two employers nevertheless had to establish that his exposure to asbestos was "injurious." The Court of Appeals correctly applied § 97-57 and explained "[i]n light of the irrebuttable legal presumption that the last thirty days of work subjecting the plaintiff to the hazards of asbestos is the period of last injurious exposure and the Commission's holding that plaintiff was exposed to the inhalation during the forty-eight days he worked for the defendant, such exposure must be deemed injurious." Id. at 566 [emphasis added]. However, contrary to plaintiff's argument in the instant case, the Court of Appeals in Barber
did not find that a plaintiff did not have to establish current exposure to asbestos for purposes of removal; rather, the Court of Appeals explained that the plaintiff did not have to prove that his exposure to asbestos was "injurious" because § 97-57 creates a presumption that 30 days of exposure within seven months is "injurious." Id. at 566. Further, the Court in Barber did not find evidence of exposure in the last 30 days of employment based on a presumption. In fact, the Barber
court had evidence of record to determine that plaintiff was exposed to asbestos during the forty-eight days that he worked for defendant. Id.
Similarly, the Supreme Court's decision in Fetner does not support plaintiff's argument that a stipulation of "last injurious exposure" is equivalent to a stipulation of current exposure. See Fetner v. RockyMount Marble Granite Works, 251 N.C. 296, 111 S.E.2d 324 (1959). InFetner, a dusty trades case, the issue was whether the exposure with a third employer for whom plaintiff only worked for eleven months was "injurious" when plaintiff was diagnosed with silicosis before he went to work for the third employer. In this case, plaintiff was diagnosed with silicosis on March 4, 1949, when he was working for the first employer, and his dusty trade card was revoked after his diagnosis. On August 10, 1950, plaintiff requested permission from the Industrial Commission to waive compensation and to go to work for the second employer. Plaintiff worked for the second employer from July 26, 1950 to October 19, 1950. Plaintiff then went to work for a third employer from November 4, 1950 to September 29, 1951. No waiver of compensation was sought for plaintiff's employment with the third employer, thereby raising the issue of whether the eleven-month employment with the third employer was "injurious" in light of the prior diagnosis of silicosis and prior revocation of plaintiff's dusty trade card based on that diagnosis. In examining the liability of the third employer, the Supreme Court held that the Commission may not arbitrarily select any thirty-day period of employment, but must select the last 30 days within a seven-month period during which the plaintiff was last exposed, as the period of "last injurious exposure." Fetner, 251 N.C. at 301. Moreover, the Supreme Court did not relieve plaintiff of the burden to present evidence on the period of hazardous exposure. Id. Competent evidence was presented and findings were made to determine when plaintiff was last exposed to the hazards of silica.
Contrary to the suggestion of plaintiff, the Fetner and Barber
decisions do not abrogate the requirement of plaintiff to establish by the greater weight of the competent evidence the period of hazardous exposure. Rather, these decisions hold that § 97-57 creates for purposes of liability among two or more defendants, where plaintiff proved hazardous exposure, an irrebuttable presumption that exposure for at least 30 days during a seven-month period is an "injurious exposure." In light of the stipulation of the parties and the lack of evidence of other hazardous employment, this issue is not present in this case; the defendant has stipulated that plaintiff's "injurious exposure" occurred during his employment with defendant.
Further, the plaintiff's illogical argument that the last thirty days of employment was injurious, without producing evidence of exposure to any asbestos during this thirty-day period, directly violates the Supreme Court's holding in Fetner that the Commission may "not arbitrarily select any thirty days of employment." Fetner, 251 N.C. at 300,111 S.E.2d at 327. The relevant period under § 97-57 is the "last thirty days of employment while exposed to silica [asbestos] dust." Fetner,251 N.C. at 300, 111 S.E.2d at 327. Without evidence of current exposure to asbestos, the Commission cannot find that plaintiff has met the second element of his claim, entitling him to an order of removal, which when accomplished triggers the award of 104 weeks of benefits. See Austin,141 N.C. App. at 145; N.C. GEN. STAT. § 97-61.5(b).
Further, the Barber and Fetner cases were only in litigation due to the apparent inequity resulting from the strict application of § 97-57
designating liability on the last hazardous employment and did not arise from any disagreement concerning "current exposure." For example, liability must be placed on the last employer where the plaintiff has been exposed to the hazards of asbestos for as little as 30 days even when a prior employer may have hazardously exposed plaintiff to asbestos for more than twenty years. However, an employer who escapes liability in one case despite long exposure may be the last, short-term employer in the next case. Thus, taken from a broad view, the statute is equitable, and is consistent with the goal of the Legislature to promote judicial economy. See N.C. GEN. STAT. § 97-57.
 REMOVAL FROM HAZARDOUS WORK
Plaintiff has argued illogically that he is entitled to an order of removal because his employment involves a hazardous exposure to asbestos, yet suggests that he is able to safely continue in his current employment. If plaintiff is currently hazardously exposed to asbestos, and has a valid diagnosis of asbestosis, we must order his actual removal from employment. See N.C. GEN. STAT. § 97-61.5(b). If he is notcurrently hazardously exposed to asbestos, he is not in an employment that requires removal. Id.; see Austin, 141 N.C. App. at 145. Plaintiff is only entitled to 104 weeks of benefits if he is actually "removed from the industry" following a sufficient order of removal. See Austin,supra; N.C. GEN STAT. § 07-61.5(b).
The question of current exposure to asbestos as a condition precedent to the award of 104 weeks of benefits was recently addressed by the Court of Appeals in Abernathy. See Abernathy v. Sandoz Chemical, 151N.C. App. 252, 565 S.E.2d 218, review denied, 356 N.C. 432, 572 S.E.2d 421 (2002). In Abernathy, the plaintiff was represented by the same firm who represents plaintiff in this case. The Court of Appeals' opinion notes that the parties agreed that the Commission's award of 104 weeks of benefits was in error when the employee had retired and thereby was notcurrently engaged in employment that exposed him to the hazards of asbestos. Despite this concession before the Court of Appeals, plaintiff's counsel has not abandoned this argument before the Industrial Commission in this case, and insists that employees who are retired, as well as those who are currently employed in positions where there is no evidence of current exposure to the hazards of asbestos (such as this case), are entitled to removal and the 104 weeks of benefits. Further, plaintiff argues before the Commission that Austin does not require plaintiff to prove current exposure to the hazards of asbestos; however, Judge Greene's dissenting opinion, adopted by the Supreme Court, clearly states:
 "An employee who is no longer employed in a position that causes harmful exposure need not be `removed' from his employment."
Austin, 141 N.C. App. at 415, 540 S.E.2d at 835. Judge Greene's statement is consistent with the express language of the Act requiring the Commission to order removal from "any occupation that exposes him to the hazards of asbestos". If the employee is not exposed to the hazards of asbestos, there is no hazardous employment from which to order the removal and the order of removal would be a legal nullity and, hence, could not trigger an award for 104 weeks of compensation.[9]
Saliently, I believe that plaintiff has failed to satisfy the requirements for removal from hazardous employment, and the award of 104 weeks of benefits, for at least two reasons: (1) plaintiff does not have asbestosis; and (2) plaintiff has failed to establish that his employment presents a current hazard. Therefore, I find that plaintiff has not established entitlement to § 97-61.5(b) benefits.
 104 WEEKS NOT APPROPRIATE COMPENSATION FOR PLAINTIFF
Plaintiff also suggests that in order to provide compensation within the intent of the Act, the award of 104 weeks is necessary. Plaintiff's argument, however, fails to recognize that plaintiffs, who though they are not currently exposed to the hazards of asbestos and thus entitled to 104 weeks of benefits because of removal, are afforded relief for their diagnosed disease, if they have a valid diagnosis, under other statutory provisions. In fact, pursuant to § 97-64, a disabled plaintiff is entitled to recover benefits under §§ 97-29, 97-30, or 97-31.Abernathy, supra; Clark, 141 N.C. App. at 428-429; see Honeycutt v.Carolina Asbestos Co., 235 N.C. 471, 70 S.E.2d 426 (1952) (entitled to ordinary compensation under the general provisions of the Act). The fallacy of plaintiff's argument was explained in Clark:
 . . . defendants also contend that "most importantly, the payment of one hundred four weeks of compensation is reserved to those employees who are actually removed
from their employment." (Emphasis added). This Court addressed the removal requirement in Moore v. Standard Mineral Co., 122 N.C. App. 375, 469 S.E.2d 594 (1996).
 [T]he term "removal" as used by G.S. § 97-61.5
presumed medical diagnosis will occur during the hazardous employment. Thus the language regarding "removal from the industry" has specific application only to occasions when . . . identified victims of occupational disease are thereafter "removed" from hazardous industry by a directive of the Commission. However, the phrase is inapposite to instances as that sub justice wherein a claimant is diagnosed at some point subsequent to leaving hazardous employment.
 Id. at 378, 469 S.E.2d at 596. . . .
Clark 141 N.C. App. at 428-29. Although Moore and other decisions[10]
have questioned appropriate compensation for employees who are not entitled to removal, the Court, in Clark, explained that the Act, as amended, expressly provides workers' compensation benefits for employees who suffer from the occupational disease of asbestosis:
 The general rule for recovery for individuals suffering from asbestosis or asbestos-related disorders is found at N.C. Gen. Stat. § 97-64 (1991), which provides:
 Except as herein otherwise provided, in case of disablement or death from silicosis and/or asbestosis, compensation shall be payable in accordance with the provisions of the North Carolina Workers' Compensation Act.
Clark 141 N.C. App. at 428-29; see Abernathy, supra. Thus, because the Act does in fact provide benefits to disabled plaintiffs with asbestosis who are not currently exposed to the hazards of asbestos and consequently are not entitled to 104 weeks of benefits, and because there is no sound policy reason to extend the application of § 97-61.5 beyond its express and intended purpose, there is no basis to award § 97-61.5(b) benefits in this case.
The majority inappropriately cites Honeycutt v. Carolina Asbestos Co.,235 N.C. 471, 70 S.E.2d 426 (1952), for the proposition that the 104 weeks of compensation has the additional purpose to compensate the employee for the incurable nature of the disease. This finding arises from plaintiff's suggestion that the waiver provision of § 97-61.7
allows an employee to continue in his employment and at the same time receive the 104 weeks of benefits pursuant to § 97-61.5. Although § 97-61.7, and cases interpreting this provision,[11] have allowed employees to obtain the 104 weeks of benefits under § 97-61.5, our courts have held that § 97-61.7 applies only after an employee has been ordered removed and awarded compensation under § 97-61.5. SeeAustin, 141 N.C. App. at 416. Thus, § 97-61.7 does not remove plaintiff's burden to prove his entitlement to benefits under §97-61.5(b). Plaintiff's argument that Sections 97-61.5 and 97-61.7 are to be read together was rejected by the Supreme Court in Austin, which adopted the dissent of Judge Greene rather than the majority opinion of the Court of Appeals.
In the instant claim, plaintiff has not sought a waiver from removal from the Commission. In addition, plaintiff has not presented evidence to the Commission on the issue of whether the Commission should approve a waiver of further benefits and allow plaintiff to continue in hazardous employment. Therefore, a § 97-61.7 question is not properly before the Commission.
Moreover, the majority's citation to Honeycutt is not appropriate.Honeycutt is not a § 97-61.5(b) case and predates the enactment of this provision. Thus, the Supreme Court in Honeycutt did not award §97-61.5(b) benefits, or otherwise discuss § 97-61.5(b), an order of removal, the award of 104 weeks of benefits, the payment of benefits while continuing in current employment, or the payment of 104 weeks of benefits for the incurable nature of the disease. Rather, Honeycutt
supports the proposition that an employee with asbestosis is entitled to recover compensation under the general provisions of the Act (i.e.: §§ 97-29, -30, -31) as expressed in § 97-61.
 BENEFITS ARE WEEKLY PAYABLE UPON REMOVAL
The majority further errs in ordering that the 104 weeks of benefits pursuant to § 97-61.5(b) "be paid in a lump sum . . . without commutation." Section 97-61.5(b) expressly refers to "weekly compensation which compensation shall continue for a period of 104 weeks." This provision does not provide for a lump sum payment. As explained, infra, § 97-61.5(b) benefits are intended to sustain the diseased employee who must leave his employment because it causes a current, hazardous exposure to asbestos during the two-year, 104 week, period between the first panel examination and the third panel examination. Further, there would be no need for § 97-61.6 to address the payment of "remaining portion of the 104 weeks specified in G.S. § 97-61.5" if these benefits were intended to be paid in a lump sum. Thus, § 97-61.5(b) appropriately provides for "weekly compensation," rather than payment of benefits in a lump sum.
In addition, § 97-61.5(b) expressly conditions the payment of the benefits on plaintiff's removal from the hazardous industry. The third condition, necessary for the payment of 104 weeks of benefits, requires that the employee leave the "occupation which exposes him to the hazards of asbestosis" at the direction of the Commission. Moore v. StandardMineral Company, 122 N.C. App. 375, 469 S.E.2d 594 (1996); Clark v. ITTGrinnell, 141 N.C. App. 417, 539 S.E.2d 369, remanded for reconsiderationin accordance with Austin, 354 N.C. 572, 558 S.E.2d 867 (2002); N.C. Gen. Stat. § 97-61.5(b). The payment of the 104 weeks of benefits is not paid while plaintiff continues in his current employment. Rather, these benefits begin when he leaves his employment in response to a proper order of removal from the Commission.
 CONCLUSION
For the foregoing reasons, plaintiff's claim for 104 weeks of benefits pursuant to § 97-61.5(b) must be denied. Therefore, I must respectfully dissent from the majority's opinion affirming the Deputy Commissioner's Opinion and Award.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
[1] The American Thoracic Society expressed that "[I]t is possible that interstitial fibrosis may be present even though none of these criteria [referring to items 3-6, above] are satisfied, but in our opinion, in these circumstances the clinical diagnosis cannot be made." Thus, a proper diagnosis, absent pathologic examination, requires proof of the first two criteria and at least 1 of the remaining criteria. TheDiagnosis of Nonmalignant Diseases Related to Asbestos, 134 AmericanReview of Respiratory Disease 363 (Adopted by American Lung Association, March 1986).
[2] This position is consistent with the legal standard that evidence of "mere possibility" or "could or might" will not competently support a finding of fact. See Holley v. ACTS, ___ N.C. ___, ___ S.E.2d ___ (2003) (expert's speculation is not sufficient despite "could or might" testimony); Swink v. Cone Mills, 65 N.C. App. 397, 309 S.E.2d 271 (1983) (mere possibility does not satisfy burden of proof). The standard is a reasonable degree of medical certainty. Holley, supra.
[3] In evidence are reports concerning chest x-rays which have beenread by numerous physicians. The October 25, 1999 was read by Dr. Dula toreveal a 0/1 profusion without pleural calcification, Dr. Rao to reveal a1/0 profusion without any pleural abnormalities consistent withpneumoconiosis, Dr. Lucas to reveal a 1/0 profusion with no pleuralabnormalities present. Noteworthy, none of these reports suggest theminimum 1/1 profusion rating required by the ATS standard. Plaintiff didhave a 1997 study that was read by Dr. Johnson (or Dr. Dula) to reveal a1/1 profusion rating without pleural calcification, however, this read isquestionable in light of the later interpretations of plaintiff's 1999study and Dr. Hayes' review of the 1997 x-ray which he reported failed toshow any parenchymal abnormality and Dr. Lucas' finding that the 1997x-ray only revealed a 1/0 profusion with no pleural abnormalities. If aperson has asbestosis, their profusion ratings don't improve; therefore,the fact that doctors chosen by plaintiff have read his 1999 x-rays toreveal a 0/1 or 1/0 profusion level renders the lone, inconsistent 1/1reading by Dr. Johnson (or Dr. Dula) on the 1997 x-ray unreliable,aberrant, and inaccurate. The physicians agree that the chest x-raysshould be read by numerous B-readers because their reads are subjectiveand a consensus opinion is more valuable than a single differingopinion. In addition, plaintiff has had CT Scans, which the physicianstestify are more sensitive than the standard B-read. The CT Scans,however, do not support the finding that plaintiff has asbestosis.
[4] Under Rule 401 of the North Carolina Rules of Evidence, "relevantevidence" is defined as evidence that tends "to make the existence of anyfact that is of consequence to the determination of the action moreprobable or less probable than it would be without the evidence." In otherwords, relevant evidence tends to establish that a contested fact ismore, or less, likely.
[5] Dr. Dula testified in his deposition that the x-ray was actuallyread by Dr. Dula, not Dr. Johnson, and that the report was mistakenlyplaced on Dr. Johnson's form instead of Dr. Dula's form. Deposition ofDr. Dula at p. 87.
[6] If this were a medical malpractice case, counsel would be successfully arguing that a doctor would malpractice to base his diagnosis on one radiology study when numerous other studies fail to confirm the findings of the lone, inconsistent, aberrant study.
[7] It should be noted that under the ATS standard and the accepted medical practice of differential diagnosis, the physician should review all of the relevant medical findings in forming the diagnosis. In this capacity, the ATS standard holds that the diagnosis of asbestosis cannot be made without one of the third through sixth criteria in addition to a proper history of latency and exposure. However, a finding of one or more of the third through sixth criteria in addition to a history of latency and exposure does not mandate the diagnosis of asbestosis when the physician has other medical evidence to make another diagnosis more likely. When there is evidence of one or more of the third through sixth criteria, asbestosis should be at least one of the potential diagnoses to be considered by the pulmonologist in forming the diagnosis for plaintiff's condition.
[8] The stipulation of the parties reads:
 "Plaintiff was last injuriously exposed to asbestos during Plaintiff's employment with Defendant-Employer Weyerhaeuser Company, and specifically, that the Plaintiff-Employee was exposed to asbestos for thirty (30) days within a seven month period, as required by N.C. Gen. Stat. § 97-57."
[9] Plaintiff also suggests that the stipulation of the parties also requires the Commission to enter an order of removal. The stipulation states: "The parties agreed further that should plaintiff be awarded compensation pursuant to N.C. Gen. Stat. § 97-61.5(b) the Deputy Commissioner may include language removing plaintiff from further exposure pursuant to N.C. Gen. Stat. § 97-61.5(b)." This stipulation is contingent on a finding that "plaintiff be awarded compensation pursuant to N.C. Gen. Stat. § 97-61.5(b)" and does not otherwise abrogate the requirements of the Commission to comply with § 97-61.5(b) of the Act.
[10] Even, Judge Greene, in Austin, wrote:
 "I acknowledge the `removal' requirement of section 97-61.5(b) raises concerns regarding whether an employee who chooses to remove himself from employment prior to diagnosis of asbestos should be precluded from receiving 104 weeks of compensation under section 97-61.5(b). For example, this statute may encourage employees who are exposed to asbestos to remain in their employment until they receive a diagnosis of asbestosis. These concerns, however, should not be resolved by this Court; rather, the proper forum for addressing these concerns is in the Legislature."
Austin, 540 S.E.2d at 836. This inquiry, however, does not remove the requirement that the removal from hazardous employment must occur at the "directive of the Commission." Moore, 569 S.E.2d at 596.
[11] Section 97-61.7 provides that "[a]n employee who has been compensated" under § 97-61.5(b) as an alternative to forced change of occupation may, subject to approval of the Industrial Commission, waive further compensation and continue his employment. Plaintiff incorrectly relies on Bye v. Interstate Granite Company, 230 N.C. 334, 53 S.E.2d 274
(1949), which preexisted the current statutory provision for an order of removal, for the proposition that plaintiff may receive an order of removal and continue to maintain his employment. A careful reading of this case reveals that the Commission did not actually order plaintiff to be removed from his employment, but, advised plaintiff that he should seek new employment based on reports from his examining physician and based on plaintiff's age and long exposure and left the decision to leave his employment to plaintiff. Significantly, the Bye decision pre-dates the changes to the Act requiring the Commission to order removal, and in fact, no order of removal was entered by the Commission in that case, therefore, Bye does not support the proposition for which it is offered by plaintiff. Plaintiff also cites Roberts v. Southeastern Magnesia Asbestos Co., 61 N.C. App. 706, 301 S.E.2d 742 (1983) for the proposition that the Commission can order plaintiff to "refrain from exposing himself to the hazards of employment" and receive 104 weeks of benefits without leaving his employment. Contrary to the suggestion of plaintiff, however, the Roberts decision stands for the proposition that a plaintiff is entitled to compensation for his removal from employment exposing plaintiff to the hazards of asbestos as an incentive to force change in occupation, or provide a "safety net", without requiring plaintiff to prove an incapacity to earn wages due to his disease.61 N.C. App. at 709. In Roberts, there was no evidence that plaintiff continued to be exposed to asbestos after his removal was ordered. The critical evidence was that plaintiff was the president of defendant-employer, that he was daily exposed to asbestos before the order of removal, regardless of the fact that defendant-employer was phasing out its use of asbestos.
Plaintiff also inappropriately relies on Honeycutt v. Carolina AsbestosCo., 235 N.C. 471, 70 S.E.2d 426 (1952). Honeycutt is not a §97-61.5(b) case, and predates the current statutory provisions. InHoneycutt, plaintiff was diagnosed with asbestosis at which time his dusty trades card was revoked and the recommendation was made for plaintiff to obtain new employment. Plaintiff found new employment as a police officer where he earned greater wages. The issue was whether plaintiff had "disability" because he had no loss of wage earning capacity. The Supreme Court explained the difference between "disablement" applicable to asbestosis and silicosis cases and "disability" for all other injuries/diseases and held that "disablement" under § 97-54 is not the same as "disability" under § 97-2. The Supreme Court explained that for asbestosis/silicosis cases "disablement" means "the event of becoming actually incapacitated from performing normal labor in the last occupation in which [plaintiff was] remuneratively employed." In Honeycutt the Supreme Court did not approve benefits under §§ 97-61.5(b) or 97-61.7. There is no mention of an order of removal or 104 weeks in this case. Rather, the Supreme Court held that plaintiff "would be entitled to ordinary compensation under the general provisions of our Workmen's Compensation Act. G.S. § 97-61;Young v. Whitehall Co., 229 N.C. 360, 49 S.E.2d 797" (1948).